SAVE DOMESTIC OIL, INC., Plaintiff,

v.

UNITED STATES, Defendant,

and

Texaco Inc., BP Amoco (now know as BP America, Inc.), Petroleos Mexicanos, P.M.I. Comercio Internacional S.A. De C.V., Pemex Exploracion Y Produccion, Saudi Arabian Oil Company, Petroleos De Venezuela, S.A., Citgo Petroleum Corporation, API AD HOC Free Trade Committee, Chevron Corporation, Exxon Corporation, Mobil Corporation, and Shell Oil Company, Defendants,

and

Robert J. Heilferty, Sanctioned Party–Appellant,

and

Lucius B. Lau, Sanctioned Party–Appellant.

Nos. 02–1042, 02–1043.

United States Court of Appeals, Federal Circuit.

Dec. 3, 2002.

Before MICHEL, LOURIE, and LINN, Circuit Judges.

PER CURIAM.

Robert J. Heilferty and Lucius B. Lau, counsel representing the government, seek vacatur of a civil contempt judgment by the United States Court of International Trade in this consolidated appeal. We *vacate.*

BACKGROUND

Because we write solely for the benefit of those involved, especially appellants, we recount the facts and procedural history of

the case only as they are relevant to our analysis which follows.

On September 19, 2000, the Court of International Trade remanded the underlying case to the Department of Commerce for "contemplation of commencement of a preliminary [antidumping] investigation," and gave the government "60 days from the date hereof for this purpose." *Save Domestic Oil, Inc. v. United States*, 116 F.Supp.2d 1324, 1343 (Ct. Int'l Trade 2000). On November 17, 2000, the government appealed the remand order. The government also moved the trial court to stay its September 19 decision and extend the time of response by Commerce. On November 27, 2000, the court denied both motions. *Save Domestic Oil, Inc. v. United States*, 122 F.Supp.2d 1375, 1381 (Ct. Int'l Trade 2000). The government then filed with this court a motion for a stay pending appeal, followed by a motion for a temporary stay pending consideration of the motion for a stay pending appeal. Neither motion was acted upon before this court dismissed the appeal in a non-precedential order for lack of jurisdiction for non-finality on July 31, 2001. *Save Domestic Oil, Inc. v. United States*, 18 Fed. Appx. 819, 821 (Fed.Cir.2001).

The government, upon receiving notice of the dismissal by this court, moved the trial court to grant a seven-day extension of time in which to respond to the September 19, 2000 remand order. The court granted the motion. *Save Domestic Oil, Inc. v. United States*, No. 99–09–00558, 2001 WL 883643 (Aug. 6, 2001). However, the court also stated that "while the defendant may have until the close of business on Friday, August 10, 2001, within which to respond to the [September 19th remand order], the defendant is also hereby directed to appear before the undersigned ... on that day to show cause, if there be any, why it should not be formally cited and sanctioned for contempt of court, commencing on or about November 20, 2000." *Id.*

On August 10, 2001, the trial court held a show-cause hearing at 11:00 a.m. Lucius B. Lau, a Justice Department attorney, and Robert J. Heilferty, a Commerce Department attorney, appeared for the government. At the outset of the hearing, the trial judge stated that

David M. Cohen, A. David Laifer, Lucius B. Lau, Robert J. Heilferty, and all those other officers and employees of the Defendant, United States Government, who, within the meaning of Sections 401 and 402 of Title 18 of the United States Code, have not obeyed and/or who have willfully resisted lawful compliance with the Court's Order of Remand of September 19, 2000, to the International Trade Administration, U.S. Department of Commerce, draw near and be heard as to why they, and each of them, should not be punished to the extent permitted by law.

Transcript of Proceedings (Aug. 10, 2001) at 3.(A3). During the hearing, the trial judge, for the first time, orally demanded of Lau names of officials and employees of the government who "participated in the decision to appeal this Court's Remand Order of September 19, 2000." *Id.* (A19–21). Lau sought a delay of two working days in order to consult with his supervisors and with counsel, on grounds of possible privilege and in view of the court's stated intent to conduct criminal contempt proceedings under Title 18. The trial judge warned that a "United States Marshal" had already been "duly notified that detention may be appropriate here, within the confines and concept of civil contempt." *Id.* (A22). The judge also asked Heilferty whether he cared to be heard concerning the questions the court had asked Lau. Heilferty stated that he was in no better

position than Lau to answer those questions. The court then held Lau and Heilferty in civil contempt and had them detained. The court reconvened at 4:00 p.m. the same day, and according to the trial judge, "their Order of Detention is hereby vacated for the remainder of this day and, if you will, this weekend." Id. (A46). The detention order was never reinstated.

The government filed a petition for a writ of mandamus with this court to prevent the trial court from pursuing further contempt proceedings. On September 23, 2001, this court temporarily stayed further contempt proceedings in the trial court, and on September 28, 2001, in a non-precedential order issued a writ of mandamus directing the trial court to vacate its orders initiating criminal contempt proceedings. *In Re United States*, 20 Fed. Appx. 847, 849 (Fed.Cir.2001).

Appellants Lau and Heilferty now request this court to vacate the trial court's civil contempt judgment of August 10, 2001. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5). *See also United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988) ("The right of a nonparty to appeal an adjudication of contempt cannot be questioned ... notwithstanding the absence of a final judgment in the underlying action.").

## DISCUSSION

We are persuaded by appellants that the Court of International Trade abused its discretion in holding them in civil contempt and briefly in detention. "Civil contempt 'is a severe remedy, and should not be resorted to where there is a fair ground of doubt as to the wrongfulness of defendant's conduct.'" *MAC Corp. of America v. Williams Patent Crusher & Pulverizer Co.*, 767 F.2d 882, 885 (Fed.Cir.1985) (cita-

tion omitted). Thus, contempt sanctions should not be imposed, except in response to action that is clearly unjustified.

We already decided that appellants' actions with respect to the decision to appeal the remand order and seek a stay were not clearly unjustified. *In Re United States*, 20 Fed. Appx. at 848. The government's determination to file the appeal "was not under the circumstances sufficient to serve as a basis for contempt proceedings." *Id.*

We conclude today that neither were appellants' actions at the August 10, 2001 show-cause hearing clearly unjustified. A government attorney is entitled to consideration of a claimed governmental privilege not to disclose information that he honestly regards as privileged and should not stand in danger of imprisonment for asserting respectfully what he considers to be lawful rights. *See Appeal of the United States Securities & Exch. Comm'n*, 226 F.2d 501, 520 (6th Cir.1955) (holding that the district court judge abused "all justifiable discretion" in adjudging the General Counsel in contempt for standing upon his claimed governmental privilege). Criminal contempt, moreover, "may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings," including assistance of counsel. *See Int'l Union, UMW v. Bagwell*, 512 U.S. 821, 826, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). Here, appellants sought a delay in responding to the trial judge's inquiry regarding the identity of supervisor officials involved in the decision to appeal the remand order because appellants believed that the names and statements of those officials could be protected by the government's deliberative process privilege. (A18). Additionally, appellants sought such a delay in order to obtain and consult their own counsel in

view of the initiation of criminal contempt proceedings against them, personally. (A32–34).

Furthermore, appellants did not unqualifiedly refuse to answer the court's inquiry. Under grave risk of exposing their clients and themselves to criminal contempt sanctions, appellants merely sought a delay of two working days to answer the court's inquiry. Appellants later in the hearing suggested that an answer might be provided even sooner, "[p]erhaps as early as this afternoon." (A32). Nevertheless, the court ordered the appellants into detention for several hours.

Plaintiffs and corporate defendants have not filed briefs or appearances. Nor has the trial court or trial judge. For this reason, we declined to hear oral argument and determined to decide the appeal on the basis of the record and appellants' brief.

Ordinarily, a review court might be expected to uphold the trial court's attempt to secure prompt compliance with its orders and answers to its questions. But the circumstances of this case, fully documented in the transcript of the August 10, 2001 proceedings, were most unusual.

## CONCLUSION

We hold that the trial court abused its discretion in judging appellants in civil contempt and its judgment is vacated. Appellants' actions in seeking a brief delay were not unjustified. In addition, the trial court had no immediate need for the information it sought. At the end of the day on August 10, 2001, in fact, the court gave the government, now represented by two assistant U.S. Attorneys, who also represented appellants, five business days to provide the information sought. Thus, holding appellants in civil contempt violated the long-standing doctrine that a court must exercise "the least possible power adequate to the end proposed." *See Shillitani v. United States,* 384 U.S. 364, 371, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966) (citation omitted).