UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-1489

Roque A. Acosta, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued March 10, 2004                                    Decided May 14, 2004  )

*Daniel G. Krasnegor*, of Washington, D.C., for the appellant.

*Ralph G. Davis*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Carolyn F. Washington*, Acting Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before IVERS, GREENE, and KASOLD, *Judges*.

GREENE, *Judge*:  Veteran Roque A. Acosta appeals, through counsel, a June 5, 2001, decision of the Board of Veterans' Appeals (Board) that denied him an effective date earlier than February 3, 1995, for the award of Department of Veterans Affairs (VA) service connection for a psychiatric disability.  Record (R.) at 1-12. Mr. Acosta asserts that the Board provided an inadequate statement of reasons or bases for its decision on the basis that it failed to address whether his March 1983 Substantive Appeal as to an earlier VA regional office (RO) decision was timely, and, if so, whether that appeal is still pending.  He argues that if that appeal remained pending at the time of the 1998 Board decision, then he would be entitled to an effective date in September 1982, the time he filed his initial claim.  Appellant's Brief (Br.) at 5.  He further contends that in its decision the Board failed to address his assigned disability rating, which he raised in a Notice of Disagreement (NOD), and he seeks a remand of that matter with instructions that he be issued a Statement of the Case (SOC) on that issue.  Appellant's Br. at 9.  The Secretary argues that the Board had a plausible basis in the record for its decision, which should thus be affirmed.  Secretary's Br. 9-18.  He

maintains that, for the purposes of determining an effective date, the record establishes that it was "not factually ascertainable until 1995 when [Mr. Acosta] submitted new and material evidence that a causative link between his [psychiatric] disability and service was demonstrated." *Id.* at 9. Finally, the Secretary asserts that Mr. Acosta's contention that the Board failed to address the percentage of disability is without merit because Mr. Acosta's Substantive Appeal to the Board and testimony before the Board expressed dissatisfaction only with the effective date of the grant of service connection, not the disability rating. *Id.* This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). Because we hold that the Board's statement of reasons or bases concerning the effective date is inadequate, the June 5, 2001 decision will be vacated and that matter remanded. The Court also holds that Mr. Acosta did file an NOD as to his assigned disability rating, and, thus, on remand VA must comply procedurally by issuing an SOC.

## I. FACTS

Mr. Acosta served honorably on active duty in the U.S. Army from August 1975 to November 1975 and from May 1976 to May 1979. R. at 14-15. In September 1982, he filed a claim for VA service connection for a nervous condition, and on March 21, 1983, the RO denied that claim. R. at 109-11. He filed a timely NOD on March 8, 1984, disagreeing with that decision. R. at 209, 211. On May 1, 1984, the RO issued an SOC along with a cover letter that stated: "If we do not hear from you in 60 days, we will assume you do not intend to complete your appeal and we will close our record. If you require more time, please let us know within 60 days." R. at 215-17. On June 26, 1984, the RO received an unsigned letter from Mr. Acosta stating:

> I have evidence, or will obtain evidence, that will verify that I had at least one visit to a psychiatric facility, within one year of discharge from service. I am in the process of locating these records, and I am requesting additional time in[]order to prepare my case.

R. at 219. There is no indication in the record that VA responded to this statement. *See* R. at 1-679. VA received no further correspondence from Mr. Acosta on this matter until February 3, 1995, when he filed a request for a review of his files regarding his "current disability status." R. at 223. On February 21, 1995, the RO requested clarification from Mr. Acosta regarding the "nature of the

2

illness, disease or injury" for which he was claiming benefits. R. at 227. In March 1995, he submitted a statement in support of his claim, which stated:

> In 1979 I was admitted to the Veteran's Hospital in Westwood, CA. In 1980 I was admitted to the Veteran's Hospital in Palo Alto, CA. After that I was also admitte[d] to the Valley Medical Center in San Jose, CA[. A]ll these admissions were for psychiatric illness. I'm still currently under a doctor's care at [an] out[-]patient facility in San Jose, CA. Please update me as to the status of my service[-]connected disability.

R. at 229. The RO then advised him that under 38 U.S.C. § 5108 he needed to present new and material evidence to reopen his claim. R. at 231.

In October 1995, the RO, after finding that new and material evidence had not been presented, declined to reopen Mr. Acosta's claim for service connection for a psychiatric disorder. R. at 257-58. In June 1996, Mr. Acosta appealed and submitted additional evidence from his VA psychiatrist. R. at 276-77, 280-81. Additionally, Mr. Acosta and his wife testified under oath at a hearing held in November 1996. R. at 283-300. A Supplemental SOC (SSOC) was issued later that month. R. at 302-04. Another hearing was held in July 1997, during which Mr. Acosta again testified under oath about the onset of his condition. R. at 312-31. In January 1998, the Board found that he had presented new and material evidence to reopen his claim for a psychiatric disability diagnosed as schizophreniform psychosis. R. at 333-40. The Board also found:

> In December 1982, the RO administratively denied the veteran's claim for entitlement to service connection for a psychosis on the basis that mental illness was not shown by the evidence of record. Most recently, in a March 1983 rating decision, the RO denied the veteran's claim again because the veteran's psychosis was not shown to have been present within one year after service. The veteran was notified of the decision and did not file a timely appeal. As a result, the March 1983 decision subsequently became final one year later.

R. at 335. The matter was remanded to the RO for further development of the reopened claim. R. at 333-40.

In October 1998, the RO awarded Mr. Acosta service connection for chronic paranoid schizophrenia rated at a 70% disability rating, effective from February 3, 1995. R. at 536-41. In November 1998, Mr. Acosta filed an NOD concerning the effective date, stating that he had

continuously pursued an appeal of the denial of his initial claim since it was disallowed in March 1983. R. at 543. Additionally, in February 1999, Mr. Acosta also filed the following statement:

> I disagree with your decision of 10/19/98 granting 70% service connection for my schizophrenia. I feel my disability prevented me from working and I am unable to function socially. My condition has worsened greatly[. ]I have been unable to work for 4+ years. I am [being] treated at [the] VA [outpatient] clinic in San Jose, CA. . . . My [doctor] has stated my schizophrenia has worsened. My social adaptability is nil.

R. at 571 (emphasis in original). There is no indication in the record that VA responded to this statement. *See* R. at 1-679. In March 1999, Mr. Acosta filed an application for a rating of total disability based on individual unemployability (TDIU) on the basis that he had been self-employed and was no longer able to perform his work. Supplemental (Suppl.) R. at 19. In May 2000, the RO awarded Mr. Acosta a rating of TDIU, effective February 3, 1995. Suppl. R. at 26. The RO also continued Mr. Acosta's 70% disability rating for chronic paranoid schizophrenia. *Id.* There is no evidence in the record on appeal that Mr. Acosta appealed that decision. *See* R. at 1-679.

A hearing was held on February 14, 2001, at which Mr. Acosta and his wife both testified that he had completed all the paperwork he received from the RO for both the original claim in 1982 and the appeal that followed. R. at 611-26. Mrs. Acosta also testified, however, that because of financial difficulties and the couple's many changes of address during that appeal period, it was reasonable to believe that they may not have received the necessary paperwork for filing a Substantive Appeal. R. at 614.

In the June 2001 decision here on appeal, the Board found:

> In March 1984, the veteran filed a timely [NOD] with the March 1983 RO rating decision denying service connection for chronic psychiatric disability, and [an SOC] addressing the matter (with attached cover letter and VA form 1-9) was issued on May 1, 1984[,] and sent to him at his last known address of record.
>
> . . . .
>
> By (unsigned) letter received by the RO in June 1984, the veteran referred to correspondence dated May 1, 1984 (thereby suggesting that he had received the May 1, 1984 [SOC]), and indicated that he was in the process of securing evidence in support of his claim of

> service connection for chronic psychiatric disability; he requested "additional time" to prepare his "case," noting that he would submit additional evidence as soon as it became available.
>
> . . . .
>
> No further correspondence was received from, or on the veteran's behalf, until April 30, 1985, at which time he submitted to the RO documents unrelated to his service[-]connection claim; no mention was made of any claim of service connection for any disability.
>
> . . . .
>
> As the veteran did not perfect his appeal (by filing a timely [S]ubstantive [A]ppeal) from the March 1983 RO rating decision denying his claim of service connection for chronic psychiatric disability, that decision became final and is not subject to revision on the same factual basis.

R. at 5-6. Based on these findings, the Board concluded that the criteria for an effective date earlier than February 3, 1995, for Mr. Acosta's award of service connection had not been met. R. at 1-11. The Board also stressed that the only issue then on appeal was "entitlement to an earlier effective date for the award of service connection for chronic psychiatric disability." R. at 10. The Board specifically found that "the issue of timeliness or adequacy of [a] [S]ubstantive [A]ppeal following the March 1983 RO denial of service connection for psychiatric disability [was] not now before the Board." *Id.* (emphasis in original). The Board noted that the January 1998 Board decision had already found that Mr. Acosta had not appealed the 1983 RO decision. R. at 11. The Board did not address, nor did Mr. Acosta specifically raise, any issues concerning Mr. Acosta's February 1999 statement that disagreed with his 70% disability rating. R. at 1-11. This appeal followed.

## II. ANALYSIS

### A. Effective Date

Generally, "the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor." 38 U.S.C. § 5110(a); *see also* 38 C.F.R. § 3.400

(2003); *Crawford v. Brown*, 5 Vet.App. 33, 35 (1993). In *Myers v. Principi*, 16 Vet.App. 228 (2002), the Court held that a VA procedural error can cause a claim stream to remain open regardless of the length of time that has passed. The "resolution of the question of whether the Board accurately determined the effective date requires the Court to decide whether the Board erred in its fact[]finding." *Scott v. Brown*, 7 Vet.App. 184, 188 (1994) (quoting *Quarles v. Derwinski*, 3 Vet.App. 129, 135 (1992)). When reviewing the Board's factfinding, the Court may only "hold unlawful and set aside or reverse such finding if the finding is clearly erroneous." 38 U.S.C. § 7261(a)(4); *see Lovelace v. Derwinski*, 1 Vet.App. 73 (1990); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52-53 (1990). Under this standard, the Court may overturn the Board's factual determinations only when there is no plausible basis in the record for them. *See Smallwood v. Brown*, 10 Vet.App. 93, 97 (1997); *Gilbert*, 1 Vet.App. at 49.

The Board is required to review and adjudicate all issues reasonably raised before it. *See Suttmann v. Brown*, 5 Vet.App. 127, 132 (1993). In addition, the Board is required to provide a written statement of the reasons or bases for its findings and conclusions on all material issues of fact and law presented on the record; the statement must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court. *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 57. To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence that it finds to be persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996 table).

Under applicable law and VA regulations, a claimant may appeal an RO decision by filing an NOD within one year from the date that the RO mails notice of the decision. *See* 38 U.S.C. § 7105(b)(1); 38 C.F.R. § 20.302(a) (2003). Upon receipt of a timely NOD, the RO must issue an SOC, and a Substantive Appeal must be filed by the appellant within 60 days from the date that the RO mails the SOC to the appellant. 38 U.S.C. §§ 5104 and 7105; 38 C.F.R. § 3.103(f) (2003); 38 C.F.R. § 20.302(b) (2003). VA regulations allow a claimant to request an extension of the time for filing a Substantive Appeal from an RO decision, based upon a showing of good cause. *See* 38 C.F.R. § 20.303 (2003). The 1983 version of the regulation stated:

6

An extension of the 60-day period for filing a [S]ubstantive [A]ppeal or the 30-day period for responding to the a[n SSOC] may be granted for good cause shown. A request for such an extension should be in writing and must be made prior to expiration of the [S]ubstantive [A]ppeal. The request for extension should be filed with the [VA] office from which the claimant received notice of the determination being appealed. That same office *will* make a determination as to extension. A denial of a request for extension may be appealed to the Board.

38 C.F.R. § 19.130 (1983) (emphasis added).

Mr. Acosta argues that the Board's statement of reasons or bases concerning his entitlement to an earlier effective date was inadequate because it failed to address whether VA's failure to respond to Mr. Acosta's timely request for an extension kept his claim open and thus pending at the time service connection was awarded. Appellant's Br. at 4-7. Mr. Acosta contends that on June 26, 1984, he filed a timely request for an extension of time to complete his Substantive Appeal, but that the RO never acted on the request as required under 38 C.F.R. § 19.130 (1983). He contends that in its June 2001 decision the Board should have considered whether the RO's failure to act on or respond to his request for an extension was a procedural error that tolled the appeal period for the March 1983 decision. Appellant's Br. at 4-8. Concerning this issue the Board stated:

> The Board is mindful of the veteran's and his spouse's contention . . . to the effect that he continuously pursued his claim of service connection for chronic psychiatric disability since the time he initially filed his claim in September 1982. They contend, essentially, that he did perfect a timely appeal from the March 1983 RO decision denying service connection for psychiatric disability. They contend, in the alternative, that they were forced, by various circumstances beyond their control, to move frequently beginning in 1979, and that he therefore did not receive notice from the RO, informing him of the necessity and the time limit for the filing of [S]ubstantive [A]ppeal (the Board notes that the evidence of record clearly shows that he did receive the May 1, 1984 [SOC], with attached VA Form 9, as he made reference to the [SOC] in his letter received by the RO in June 1984). The Board stresses, however, that the only matter currently on appeal consists of entitlement to an earlier effective date for the award of service connection for chronic psychiatric disability; the issue of timeliness or adequacy of [S]ubstantive [A]ppeal following the March 1983 RO denial of service connection is <u>not</u> now before the Board.

On February 3, 1995, the veteran filed an application to reopen the claim of service connection for chronic acquired psychiatric disability. Although his claim had been denied by the RO in October 1995, by decision in January 1998, the Board found that new and material evidence had been submitted in support of the service[-]connection claim. In addition to finding that the veteran submitted new and material evidence in support of his claim of service connection for chronic psychiatric disability, the Board determined, in January 1998, that his service connection claim was previously disallowed by the RO and not appealed in a timely fashion; the Board thus found that the March 1983 RO rating decision was final.

R. at 10-11 (emphasis in original). The Secretary contends that it was the 1998 Board decision and not the 2001 Board decision that had adjudicated the issue of whether Mr. Acosta failed to submit a timely Substantive Appeal to the March 1983 RO decision. Therefore, the Secretary argues that because Mr. Acosta did not appeal the 1998 Board decision to the Court, that decision became final and the Court cannot now revisit the issue. We reject this argument.

In *Breeden v. Principi*,17 Vet.App. 425 (2004), the Court held that the Board's remand of the veteran's claim to the RO was not an adverse final decision over which the Court had jurisdiction. *See also* 38 C.F.R. § 20.1100(b). Similarly, in this case the Board's remand in January 1998 of Mr. Acosta's claim did not constitute a final decision of his earlier claim because further development of the claim could affect the decision on the award's effective date. Furthermore, at the time of the remand, Mr. Acosta had not been awarded service connection. Thus, no effective[-]date determination was required. Only after he was awarded service connection and assigned an effective date, and those decisions had been reviewed finally by the Board, could he appeal to this Court concerning the effective date or rating assigned. *See Matthews v. Principi*, 15 Vet.App. 138, 139 (2001) (dismissing for lack of jurisdiction because no final Board decision had been made). Mr. Acosta was awarded service connection after the claim was reopened; the issue of his effective date was raised before the RO; and he then appealed the matter to the Board in June 2001.

During its review of the claim, the Board had an obligation to consider all reasonably raised matters regarding the issue on appeal. We are satisfied that the question of whether Mr. Acosta's 1982 claim remained pending as a result of VA's failure to respond to his timely request for an extension to file a Substantive Appeal was reasonably raised before the Board. *See Suttmann, supra*. Therefore, the Board's failure to address whether the claim remained open rendered its statement of

reasons or bases inadequate. Thus, the decision will be vacated and this matter remanded to the Board for further adjudication. On remand, the Board should address the requirements of 38 C.F.R. § 19.130 (1982), and their effect, if any, on the question of whether Mr. Acosta's 1982 claim remained pending at the time the RO awarded him service connection in 1998.

### B. Increased Disability Rating

As an initial matter, the Court notes that the appellant did not raise before the Board any of the arguments that he now raises before the Court. Nevertheless, the "Court may hear legal arguments raised for the first time with regard to a claim that is properly before the Court." *Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000). Mr. Acosta's claim is properly before the Court, and he raises appropriate argument concerning the elements of that claim. Here, Mr. Acosta argues that the Board erred by failing to address the NOD he filed in February 1999 concerning the assigned disability rating. He seeks a remand of the matter with instructions to the Board that he be issued an SOC. Appellant's Br. at 9. The Secretary argues that Mr. Acosta's February 1999 statement was not an NOD regarding the 70% rating for schizophrenia, but instead was an application for compensation for TDIU, which was granted in February 1999. Secretary's Br. at 17. The Secretary suggests that, because Mr. Acosta stated, "I feel my disability prevents me from working and I am unable to function socially" and "I have been out of work for 4+ years" this form should be taken exclusively as a request for a TDIU rating. *Id*. The Secretary's argument is only partly correct.

Whether a document constitutes an NOD is a question of law, which this Court reviews de novo. *See* 38 U.S.C. § 7261(a)(1); *Buckley v. West*, 12 Vet.App. 76, 82 (1998) (quoting *Beyrle v. Brown*, 9 Vet.App. 24, 27-28 (1996)). An NOD is defined by regulation as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the [RO] and a desire to contest the result"; it "must be in terms which can be reasonably construed as [expressing] disagreement with that determination and a desire for appellate review." 38 C.F.R. § 20.201 (2003); *see Roy v. Brown*, 5 Vet.App. 554, 555 (1993) (noting that "appellate review of an RO decision is initiated by an NOD"). Mr. Acosta's February 1999 letter states: "I *disagree* with your decision of 10/19/98 granting 70% service connection for my schizophrenia." R. at 571 (emphasis added). His expression of

9

disagreement with the 1998 RO decision is clear and is, upon de novo review, sufficient to constitute an NOD. *See Buckley* and *Beyrle*, both *supra.*

The Secretary also argues that even if the February 1999 statement is considered to be an NOD, a remand of the matter is not required because in May 2000 the RO awarded Mr. Acosta a TDIU rating with an effective date the same as that assigned for his award of service connection for schizophrenia, giving him "substantially the same benefit that he would have received had he met the criteria for total schedular rating." Secretary's Br. at 17. A veteran is eligible for a TDIU rating only where the schedular rating is less than total. Therefore, he argues that if Mr. Acosta had been granted a 100% disability rating for his schizophrenia then any claim for a TDIU rating would have been moot. *See* 38 C.F.R. § 4.16(a) (2003). However, the same is not true for an individual who has been granted a TDIU rating and still seeks a 100% schedular rating. The Secretary's argument fails to consider completely the value of having a 100% schedular rating and that there are benefits that flow from having a 100% schedular rating that are not available under a TDIU rating. For example, 100% schedular ratings are more difficult to reduce than TDIU ratings. Total disability ratings, when warranted by the severity of the condition and not granted purely because of hospital, surgical, or home treatment, or individual unemployability, will not be reduced, in the absence of clear error, without examination showing material improvement in physical or mental condition. *See* 38 C.F.R. § 3.343 (2003). Also, as Mr. Acosta notes in his brief, there is special monthly compensation available for veterans who are permanently housebound that is payable only if the veteran has a "single service-connected disability rated as 100[%]." 38 C.F.R. § 3.350(i)(2) (2003). Furthermore, the Court has previously concluded that schedular and extraschedular rating-increase claims are not necessarily "inextricably intertwined" with TDIU rating claims predicated on the same condition. *Colayong v. West*, 12 Vet.App. 524, 537 (1999). Taking this into consideration along with the benefits that come with a 100% schedular rating that are not available under a TDIU-rating, it is evident that the award of a TDIU rating does not moot a claim for a 100% schedular rating. Therefore, Mr. Acosta's NOD concerning the disability rating assigned in October 1998 remains pending, and VA on remand must comply procedurally by providing him an SOC. *See* 38 U.S.C. § 7105(d)(1).

10

### III. CONCLUSION

Upon consideration of the foregoing, the June 5, 2001, decision of the Board is VACATED and the matters REMANDED for further adjudication consistent with this opinion.