# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-4075

DONALD A. DALLMAN, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 16, 2020                                         Decided November 30, 2020)

*Ethan F. Maron*, of Washington, D.C., for the appellant.

*Melissa A. Timbers*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Edward V. Cassidy, Jr.*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENBERG and MEREDITH, *Judges*, and SCHOELEN,[1] *Senior Judge*.

SCHOELEN, *Senior Judge*: The appellant, Donald A. Dallman, appeals an April 4, 2018, Board of Veterans' Appeals (Board) decision that denied an increased disability rating in excess of 30% for a right knee disability, status post total right knee replacement; and denied both an earlier effective date and an initial disability rating in excess of 10% for radiation proctitis with fecal urgency. The Board also granted service connection for a bilateral heel disability. The Board's award of service connection is favorable to Mr. Dallman and therefore the Court will not disturb it. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007) (stating that the Court is not permitted to reverse the Board's favorable findings of fact), *aff'd in part and dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009). Additionally, the Board found that a December 1999 rating decision denying service connection for right thigh hematoma residuals was final; found that the appellant submitted new and material evidence sufficient to reopen the claim; and remanded the matter for further adjudication.[2]

---

[1] Judge Schoelen is a Senior Judge acting in recall status. *In re Recall of Retired Judge*, U.S. VET. APP. MISC. ORDER 04-20 (Jan. 2, 2020).

[2] Further, the Board noted that "in July 2016 the Veteran submitted a Notice of Disagreement (NOD) with a July 2015 rating action of the [VA regional office (RO)]" and that "[t]hese matters are being developed for appellate

On December 13, 2019, the Court issued a memorandum decision dismissing the right thigh hematoma claim for lack of jurisdiction and vacating and remanding the Board decision as to all other issues. On January 3, 2020, Mr. Dallman filed a motion for reconsideration or, in the alternative, for panel review, arguing that the Court had committed legal error in dismissing the right thigh hematoma claim for lack of jurisdiction. Appellant's Motion (Mot.) for Reconsideration at 3. In particular, Mr. Dallman asserted that the finality determination regarding the December 1999 rating decision is a discrete legal issue appealable at this stage of litigation because it could have an adverse effect on the downstream issue of the proper effective date. Appellant's Mot. at 3-4.

The Court withdrew its previous memorandum decision on May 1, 2020, and assigned a panel to determine whether the Board's finality determination is an independently appealable issue. For the following reasons, the Court holds that the Board's finding that the December 1999 rating decision was final does not constitute a final decision, and thus the Court lacks jurisdiction to hear Mr. Dallman's right thigh hematoma residuals argument. As to the denial of a disability rating in excess of 30% for a right knee disability, and the denial of an earlier effective date and an initial disability rating in excess of 10% for radiation proctitis with fecal urgency, the Court will vacate the decision on appeal and remand the matters for further adjudication consistent with this opinion.

## I. JURISDICTION OVER REMANDED RIGHT THIGH HEMATOMA RESIDUALS CLAIM

### A. Procedural History

Mr. Dallman served on active duty in the U.S. Air Force from June 1966 to April 1970. R. at 1364. In June 1982, the RO granted service connection for a right knee disability, and in December 1983, the Board awarded a 10% disability rating. R. at 4542-45, 4613.

The RO, in a December 1999 rating decision, denied Mr. Dallman service connection for an "infected hematoma as secondary to the service[-]connected disability of the right knee." R. at 4315-17. Mr. Dallman submitted a statement in January 2000, which he titled as a "reply and a[n]

---

consideration, but have not yet been fully adjudicated by the Agency of Original Jurisdiction (AOJ)." Amended Record of Proceedings (R.) at 5. The Board therefore found that it lacked jurisdiction over the matters, and the appellant does not contend on appeal that the Board erred in its jurisdictional determination. Accordingly, the Court will dismiss the matters and not address them further. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc) (holding claims not argued on appeal are deemed abandoned and dismissing the matters).

appeal" to the December 1999 rating decision. R. at 4311-13. This submission asked VA to "please assure me that my claim is still active and that [it] will be sent to Washington for the appeals Board." R. at 4311-13.

Following a December 2010 request to reopen, in June 2012, VA denied Mr. Dallman service connection for a resolved right thigh hematoma associated with his right knee surgery. R. at 2532-40, 2735.[3] After disagreeing with that decision, he timely filed a Substantive Appeal in October 2013. R. at 1544-47; *see* R. at 1644.

In the decision on appeal, the Board found that the December 1999 rating decision denying Mr. Dallman's claim was final, but that he had submitted new and material evidence dated in December 2001 (in the form of a VA outpatient treatment record) sufficient to reopen that decision. R. at 9-10. Accordingly, the Board remanded the matter for Mr. Dallman to undergo a medical examination to ascertain the current nature and etiology of any right thigh hematoma and for the RO to readjudicate the matter. R. at 29-30. This appeal followed.

### B. Analysis

The Court has exclusive jurisdiction to review decisions of the Board. 38 U.S.C. § 7252(a). Under 38 U.S.C. § 7266(a), for a claimant to obtain review of a Board decision by this Court, that decision must be final. *See In re Quigley*, 1 Vet.App. 1, 1 (1990). A Board remand is not a final decision within the meaning of 38 U.S.C. § 7252(a). *See Kirkpatrick v. Nicholson*, 417 F.3d 1361, 1365 (Fed. Cir. 2005).

To provide some context for the parties' arguments, the Court notes that, pursuant to 38 U.S.C. § 5108, "[i]f new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim." 38 U.S.C. § 5108 (2018). To satisfy this requirement, the evidence "must be both new and material." *Smith v. West*, 12 Vet.App. 312, 314 (1999) (emphasis omitted). Further, under the applicable version of 38 U.S.C. § 5110(a), which governs the assignment of effective dates for awards of benefits,

---

[3] The Court notes that, in the June 2012 decision, the RO did not address whether new and material evidence had been submitted to reopen the previously disallowed claim for an infected hematoma secondary to the service-connected right knee disability. *See* R. at 2532-40. However, the Board is required to make that jurisdictional determination de novo and did so in the April 2018 decision on appeal. R. at 9-11; *see Woehlaert v. Nicholson*, 21 Vet.App. 456, 460 (2007) (describing the "jurisdictional nature of the new and material evidence requirement" and holding that "the Board [has] to decide whether new and material evidence [has] been presented, regardless of the RO's prior decision or subsequent actions").

the effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

38 U.S.C. § 5110(a) (2018). VA's implementing regulation similarly provides that the effective date generally will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 C.F.R. § 3.400 (2018).[4]

Mr. Dallman asserts that the Board erred in finding that the December 1999 rating decision denying service connection for right thigh hematoma residuals was final, contending that he submitted a January 2000 "reply and an appeal" that constituted an informal NOD. Appellant's Brief (Br.) at 14 (citing R. at 4311-12, 4315-17). He further asserts that the Board's finality determination is an independently appealable issue over which the Court has jurisdiction. Appellant's Mot. at 3-4 ("[B]oth 'claims for reopening' and the underlying claim of entitlement to service connection are entitled to 'one review on appeal to the Secretary,' and the Board produces final decisions on both matters." (quoting *Hickson v. Shinseki*, 23 Vet.App. 394, 399-400 (2010))). Fundamentally, Mr. Dallman contends that "[t]he Board's erroneous determination that the December 1999 rating decision became final would preclude entitlement to an effective date for service connection earlier than the date of the subsequent claim for reopening." Appellant's Br. at 14 (emphasis omitted). The Secretary counters that the Court does not have jurisdiction to hear Mr. Dallman's argument because he attempts to prematurely raise an argument as to the effective date of the award of service connection for right thigh hematoma, which was not awarded until after the decision on appeal. Secretary's Br. at 17.

Mr. Dallman's assertion as to the purportedly preclusive nature of the Board's finality determination is unsupported by relevant caselaw. In *Myers v. Principi*, the Board found final a 1958 denial of service connection for a back condition, reopened that claim (via the appellant's

---

[4] Effective February 19, 2019, Congress amended section 5108 and portions of section 5110 of title 38 of the U.S. Code, and VA amended portions of 38 C.F.R. § 3.400, to comply with the appeals processing changes mandated by the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105 (Aug. 23, 2017). *See* Pub. L. No. 115-55, § 2(x), 131 Stat. at 1115 (providing the effective date of statutory amendments); VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 170 (Jan. 18, 2019) (final rule); VA Claims and Appeals Modernization, 84 Fed. Reg. 2449, 2449 (Feb. 7, 2019) (notification of effective date for regulatory amendments). However, the regulatory changes apply only to claims in which an initial decision is issued after February 19, 2019, unless a "legacy" claimant elects to use the modernized review system. 84 Fed. Reg. at 177. There is no assertion that the new statutes or rule should apply here.

1994 request to "reopen"), and remanded the reopened claim for adjudication of the service connection issue. 16 Vet.App. 228, 229-30 (2002). Upon remand, the RO granted service connection, and on appeal, the appellant challenged the effective date, asserting that VA had failed to address a purported NOD he had filed in April 1959. *Id.* at 230. This Court agreed with the appellant, holding that the April 1959 filing was an NOD that VA had failed to address, and because "the RO never took further action in response to that [application for review]" and the appellant did not "receive a . . . [Board] decision regarding his claim," the 1958 claim was still open when he was awarded service connection. *Id.* at 232, 235-36. Thus, the Court concluded that the "original service-connection claim [was] part of the current claim stream" when service connection was awarded and remanded the matter for "the Board to assign an appropriate effective date." *Id.* at 236.

*Myers* clearly stands for the proposition that, to the extent that the Board's finding of finality regarding a prior rating decision – in the context of addressing whether a claim should be reopened – could affect a veteran's effective date, the issue *can* be adjudicated at a later date after service connection is granted. The only question left, therefore, is whether the Court *could* address the issue now, or if review is solely appropriate downstream during effective-date litigation.

*Acosta v. Principi*, 18 Vet.App. 53 (2004), not cited by either party, counsels this Court that once the Board reopens a claim and remands it for adjudication of service connection on the merits, the finality issue may only be litigated downstream. In *Acosta*, a January 1998 Board decision found final a March 1983 rating decision that denied service connection for a psychiatric condition. 18 Vet.App. at 56. It granted a February 1995 request to reopen, based on the submission of new and material evidence after the 1983 decision, and remanded the matter for further adjudication. *Id.* at 56. In October 1998, the RO awarded service connection and assigned an effective date of February 1995. *Id.* The appellant filed an NOD in November 1998 contesting the effective date, arguing that he had continuously pursued his appeal since 1983. *Id.* On appeal, Mr. Acosta asserted that a document he filed in June 1984 should have been treated as a request for an extension of time to file a Substantive Appeal, but was never acknowledged or adjudicated, and thus his original claim remained pending. *Id.* at 56-57. The Board in 2001 denied Mr. Acosta an earlier effective date, finding that "the issue of timeliness or adequacy of [a] [S]ubstantive [A]ppeal following the March 1983 RO denial of service connection for psychiatric disability [was] *not* now before the Board," because the January 1998 Board decision had already found that

5

Mr. Acosta had not appealed the 1983 RO decision. *Id.* at 57 (citations omitted) (emphasis in original). On appeal to the Court, the Secretary argued that the Board's January 1998 finality determination regarding the March 1983 rating decision controlled and that because Mr. Acosta had not appealed the 1998 decision instead of the 2001 decision, the Court could not revisit the issue. *Id.* at 59. The Court disagreed and vacated the 2001 Board decision on appeal, stating:

> In *Breeden v. Principi*, 17 Vet.App. 475 (2004), the Court held that the Board's remand of the veteran's claim to the RO was not an adverse final decision over which the Court had jurisdiction. *See also* 38 C.F.R. § 20.1100(b). Similarly, in this case the Board's remand in January 1998 of Mr. Acosta's claim *did not constitute a final decision* of his earlier claim because further development of the claim could affect the decision on the award's effective date. Furthermore, at the time of the remand, Mr. Acosta had not been awarded service connection. Thus, no effective[-]date determination was required. *Only after he was awarded service connection and assigned an effective date, and those decisions had been reviewed finally by the Board, could he appeal to this Court concerning the effective date or rating assigned.* *See Matthews v. Principi*, 15 Vet.App. 138, 139 (2001) (dismissing for lack of jurisdiction because no final Board decision had been made).

*Acosta*, 18 Vet.App. at 59 (emphasis added).

*Acosta*, therefore, stands for the proposition that this Court cannot consider an appellant's contentions regarding the Board's finality determination after reopening, but prior to the award of service connection, because that finality decision, along with the decision to reopen and remand a matter, does not constitute a final Board decision as to his service-connection claim or the effective date of an award. Here, just as in *Acosta*, Mr. Dallman asserts that there is a previously submitted document that has the effect of keeping open his original service-connection claim, and thus entitles him to an earlier effective date. This may be so. But it is for the RO or Board to adjudicate after service connection has been granted. This Court cannot assert jurisdiction over the matter where there is no final decision on the service-connection claim.[5] *See Maggitt v. West*, 202 F.3d

---

[5] Nothing in this decision should be read as precluding a veteran from asserting before the RO that there is a pending, unadjudicated matter. If a veteran believes he or she submitted a document such as an NOD that VA failed to address, the veteran is not barred from arguing that point before the RO in the first instance. *DiCarlo v. Nicholson*, 20 Vet.App. 52, 56-57 (2006) ("[A] claim may remain in an unadjudicated state due to the failure of the Secretary to process it. In such instances, the appropriate procedure for a claimant to press a claim believed to be unadjudicated (and for which there is no final decision that arguably failed to consider the claim) is to pursue a resolution of the original claim."), *aff'd sub nom. Dicarlo v. Peake*, 280 F. App'x 988 (Fed. Cir. 2008). Rather, we simply conclude that, whenever the Board has deemed a rating decision final and reopened and remanded the matter, arguments regarding effective date – which include arguments as to the finality issue – are not appropriate for judicial review until after the effective date is assigned, and that element of the claim is the subject of a final Board decision. *See, e.g.*, *Grantham v. Brown*, 114 F.3d 1156, 1158 (Fed. Cir. 1997) (stating that the "first decision regarding a claim for

1370, 1376 (Fed. Cir. 2000) ("A 'decision' of the Board, for purposes of [this Court's] jurisdiction under [38 U.S.C. § 7252], is the decision with respect to the benefit sought by the veteran . . . ."); *Ledford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998) (holding that this Court's "jurisdiction is premised on and defined by the Board's decision concerning the matter being appealed"); *Jarrell v. Nicholson*, 20 Vet.App. 326, 330-32 (2006) (en banc). Further, "[t]he concept of res judicata requires that there be only one valid decision on any adjudicated issue or claim," *DiCarlo*, 20 Vet.App. at 55, and therefore it would be inappropriate to permit litigation on the finality issue at the service-connection stage *and* the earlier-effective-date stage.

Simply put, we find no legal basis for Mr. Dallman's argument that he will be precluded from an earlier effective date for his service-connected disability if he is not allowed to adjudicate the Board's finality determination now. To the contrary, the Board's threshold finality determination has no preclusive effect on potential effective dates during the downstream earlier-effective-date litigation.[6] Accordingly, because the Board's finality determination is not a final Board decision as to the ultimate issue of service connection, and thus not a final decision within the meaning of sections 7252(a) and 7266, the Court will dismiss the issue for lack of jurisdiction.[7]

---

benefits might not resolve, or even address, all necessary elements of the application for benefits" and holding that an NOD appealing "the logically up-stream element of service-connectedness" from an initial RO decision "[cannot] concern the logically down-stream element of compensation level").

[6] Mr. Dallman and the Secretary both note that, subsequent to the Board remand, the RO issued a January 2019 decision granting service connection for the right thigh hematoma residuals. Appellant's Br. at 15; Secretary's Br. at 17 n.1. The Secretary further addresses Mr. Dallman's attachment of the RO's January 2019 decision as an appendix to his principal brief and asks this Court to "strike the exhibit from its calculus" because it would be inappropriate for us to consider records not before the Board. Secretary's Br. at 17 n.1. To the extent that the Secretary asks this Court to literally strike the appendix from the appellant's principal brief, we note that a motion cannot be contained within a party's brief. *See* U.S. VET. APP. R. 27. However, we agree with the Secretary that this attachment was inappropriate, and have not considered it in resolving the legal questions before the Court. *See* 38 U.S.C. § 7252(b) ("Review in the Court shall be on the record of proceedings before the Secretary and the Board."); *see also Murillo v. Brown*, 8 Vet.App. 278, 280 (1995) (per curiam order) ("For the Court to base its review on documents not included in the Board's calculus at the time it rendered its decision would render the Court a fact finder de novo, exceeding its authority under the statutory scheme which establishes the Court as an appellate body.").

[7] As a final matter, even if the Court could address the finality of a prior rating decision in this context, the Court's determination on the matter would amount to nothing more than an improper advisory opinion unless and until entitlement to benefits is granted. *Cf. Ingram v. Nicholson*, 21 Vet.App. 232, 254 (2007) (per curiam) ("[D]eciding whether or not a claim was reasonably raised below on the possibility that it might be relevant to a future effective-date determination amounts to nothing more than an advisory opinion.").

## II. REMAINING ISSUES ON APPEAL

The legal underpinnings of the remaining issues on appeal are not disputed, and the Secretary conceded at oral argument that he does not dispute any of the holdings in the Court's revoked memorandum decision as to these remaining issues. Oral Argument (OA) at 30:30-30:52, http://www.uscourts.cavc.gov/oral_arguments_audio.php. Therefore, for the reasons set forth below, the Court will vacate the Board decision as to all remaining issues on appeal and will remand the matters for further adjudication.

A. Failure to Discuss Rating by Analogy to Diagnostic Code 7332 for Radiation Proctitis

### 1. Procedural History

In December 2003, the RO granted service connection for prostate cancer, effective September 2003. R. at 3863-69. Over the years, the RO also granted service connection for residuals of Mr. Dallman's prostate cancer, including radiation proctitis with fecal urgency, gastroesophageal reflux disease with Barrett's esophagus, erectile dysfunction, and presumed embolization/migration of a brachytherapy seed to the left lower lung. R. at 105-06.

Meanwhile, Mr. Dallman filed an increased rating claim in October 2009 for his prostate cancer residuals. R. at 3069-86. During a May 2010 VA examination, the examiner first diagnosed Mr. Dallman with radiation proctitis and reported that Mr. Dallman's radiation proctitis had "more than likely" produced fecal incontinence. R. at 2491-93.

In August 2014, VA granted Mr. Dallman service connection for radiation proctitis, effective May 2010, and rated him by analogy under Diagnostic Code (DC) 7399-7319 for irritable colon syndrome. R. at 1383-87, 1426-31. In August 2015, Mr. Dallman appealed, arguing for an increased disability rating as well as an earlier effective date of May 2009. He also asserted that VA chose the incorrect DC and that he should instead be rated by analogy under DC 7332. R. at 1039-40. In July 2016, he asserted in part that he was entitled to a 60% disability rating under DC 7332. R. at 358-61.

The Board decision on appeal in relevant part did not discuss Mr. Dallman's argument that he is entitled to a 60% disability rating for his radiation proctitis under DC 7332.

### 2. Analysis

The Board is required to consider all theories of entitlement to VA benefits that are either raised by the claimant or reasonably raised by the record, *Schroeder v. West*, 212 F.3d 1265, 1271 (Fed. Cir. 2000); *Robinson v. Peake*, 21 Vet.App. 545, 553 (2008), *aff'd sub nom. Robinson*

*v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009), and the Court has jurisdiction to review whether the Board erred in failing to consider such issues, *Barringer v. Peake*, 22 Vet.App. 242, 244 (2008). Indeed, before making a decision, the Board must adjudicate all issues reasonably raised by a liberal reading of all documents and oral testimony in the record. *Brannon v. West*, 12 Vet.App. 32, 34 (1998). As always, the Board must provide a statement of the reasons or bases for its determination, adequate to enable an appellant to understand the precise basis for its decision, as well as to facilitate review in this Court. 38 U.S.C. § 7104(d)(1); *see Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). To comply with this requirement, the Board must analyze the credibility and probative value of the evidence, account for the evidence it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant. *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table).

Preliminarily, the appellant's principal brief notes his assertions in July 2016 that he is entitled to a 60% disability rating for his radiation proctitis under DC 7332 and argues that the Board erroneously declined to assess this theory of entitlement in the decision on appeal. Appellant's Br. at 8-9. The Secretary concedes that remand is appropriate for the Board to discuss the issue in the first instance. Secretary's Br. at 16. Because the Board must address all theories of entitlement raised by the appellant, and because it failed to do so in this instance, the Court agrees with the parties and will remand the matter for the Board to address the matter in the first instance. *Robinson*, 21 Vet.App. at 553; *see Brannon*, 12 Vet.App. at 34.

### B. Earlier Effective Date for Radiation Proctitis

As noted above, 38 U.S.C. § 5110 governs the assignment of effective dates for awards of benefits:

> [T]he effective date of an award based on an original claim, a claim reopened after final adjudication, or a claim for increase, of compensation, dependency and indemnity compensation, or pension, shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of application therefor.

38 U.S.C. § 5110(a) (2018). Similarly, the implementing regulation states that the effective date of an award shall be the date of receipt of the claim or the date entitlement arose, whichever is later, unless the claim is received within 1 year after separation from service. *See* 38 C.F.R. § 3.400 (2014). An exception to this general rule occurs in "an award of increased compensation." 38 U.S.C. § 5110(b)(3); *see* 38 C.F.R. § 3.400(o)(2). An effective date for such an award may

date back as much as 1 year before the date of the formal application for increase, if it is factually "ascertainable that an increase in disability had occurred" within that timeframe. 38 U.S.C. § 5110(b)(3); *see Harper v. Brown*, 10 Vet.App. 125, 126 (1997); 38 C.F.R. § 3.400(o)(2).

The Board's determination of the proper effective date for an award of VA benefits is a finding of fact reviewed under the "clearly erroneous" standard of review set forth in 38 U.S.C. § 7261(a)(4). *See Hanson v. Brown*, 9 Vet.App. 29, 32 (1996). A finding of material fact is clearly erroneous when the Court, after reviewing the entire evidence, "'is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert*, 1 Vet.App. at 52 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

In the decision on appeal, the Board noted that VA granted an effective date of May 26, 2010, to Mr. Dallman for radiation proctitis because that was the date of a gastrointestinal examination that revealed he had developed fecal urgency and incontinence over the course of the previous year. R. at 28. The Board then noted that Mr. Dallman had not filed a formal or informal claim for this disability, and the medical examination was the earliest medical demonstration of these complaints. *Id.* Therefore, the Board concluded that May 26, 2010, was the earliest date upon which it could determine that entitlement to service connection for radiation proctitis arose. *Id.*

Mr. Dallman argues that the Board provided an inadequate statement of reasons or bases for denying an effective date earlier than May 2010 for his radiation proctitis. Appellant's Br. at 9-11. Currently pending before a panel of the Court in *Bailey v. Wilkie*, U.S. Vet. App. No. 19-2661 (argued July 27, 2020), is the question of how VA should evaluate symptoms related to prostate cancer and whether, after March 24, 2015 (the date VA amended 38 C.F.R. § 3.155 to eliminate informal claims), claimants must file formal claims when the evidence reasonably raises the issue of secondary service connection. However, a decision in *Bailey* is not necessary for the resolution of the instant appeal, because both parties have agreed that remand is required in these circumstances for the Board to provide adequate reasons or bases. OA at 30:30-30:52 (the Secretary conceded that he does not dispute any of the holdings in the Court's revoked memorandum decision). Therefore, the Court will remand the matter for further adjudication. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate"). On remand,

10

the Board should carefully discuss the applicability of § 3.400(o)(2), with emphasis on whether Mr. Dallman's radiation proctitis falls within the scope of his October 2009 increased rating claim for prostate cancer residuals.

### C. Increased Compensation Claim for Right Knee Disability

#### 1. Procedural History

As mentioned above, VA granted Mr. Dallman service connection for a right knee disability in June 1982 and awarded him a 10% disability rating under DC 5257 in December 1983. R. at 4542-45, 4613.

In July 1997, Mr. Dallman filed an increased rating claim for his right knee disability. R. at 4490-95. After right knee surgery, the RO assigned a temporary total disability rating for convalescence, then restored Mr. Dallman's 10% disability rating, effective January 1998. R. at 4462-63, 4467-68. A December 2003 rating decision increased Mr. Dallman's disability rating to 30% under DC 5256. R. at 3826-29, 3863-69.

An August 2004 VA treatment note stated that Mr. Dallman's right knee "gave way," leading to a fall and a left knee skin abrasion. R. at 3605. Mr. Dallman retold this account at a January 2006 Board hearing. R. at 3514 ("My knee totally gave out and I fell directly on the other knee.").

Mr. Dallman subsequently underwent additional surgical procedures, including a total right knee replacement in July 2008. R. at 1768, 3091-95. VA awarded a 100% disability rating for the year following surgery and restored the 30% disability rating, effective September 2009. R. at 105.

In May 2010, Mr. Dallman underwent a compensation and pension examination for his right knee, which did not include measurements of his range of motion in passive, weight-bearing, and nonweight-bearing modes. R. at 968-71. March 2013 and September 2014 examinations of the right knee documented range-of-motion tests but did not include measurements of Mr. Dallman's range of motion in active and passive, weight-bearing, and nonweight-bearing modes. R. at 775-86, 1299-303.

Following extensive procedural development, the Board in the decision on appeal stated that all the medical opinions of record were adequate, provided by qualified medical professionals, and predicated on a full reading of the available records. R. at 7. Thus, the Board found that VA's duty to assist had been met. *Id.* Relying on the examinations of record, the Board denied a

11

disability rating in excess of 30% for Mr. Dallman's right knee disability for the entire period on appeal.

## 2. Analysis

A medical examination or opinion is adequate "where it is based upon consideration of the veteran's prior medical history and examinations," *Stefl v. Nicholson*, 21 Vet.App. 120, 123 (2007), "describes the disability, if any, in sufficient detail so that the Board's 'evaluation of the claimed disability will be a fully informed one,'" *id.* (internal quotation marks omitted) (quoting *Ardison v. Brown*, 6 Vet.App. 405, 407 (1994)), and "sufficiently inform[s] the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion," *Monzingo v. Shinseki*, 26 Vet.App. 97, 105 (2012) (per curiam). A VA joints examination that fails to account for the factors listed in 38 C.F.R. §§ 4.40 and 4.45, including those experienced during flare-ups, is inadequate for evaluation purposes. *DeLuca v. Brown*, 8 Vet.App. 202, 206-07 (1995).

Section 4.59, title 38, Code of Federal Regulations, concerns painful motion of the musculoskeletal system, and the last sentence of that regulation states that the "joints involved should be tested for pain on both active and passive motion, in weight-bearing and nonweight-bearing and, if possible, with the range of the opposite undamaged joint." 38 C.F.R. § 4.59 (2020). The Court has held that the testing listed in the final sentence of § 4.59 is required unless the medical examiner determines that it cannot or should not be done. *Correia v. McDonald*, 28 Vet.App. 158, 169-70 (2016). "Whether a medical opinion is adequate is a finding of fact, which this Court reviews under the 'clearly erroneous' standard." *D'Aries v. Peake*, 22 Vet.App. 97, 104 (2008) (per curiam); *see Gilbert*, 1 Vet.App. at 52.

The appellant currently contends that the Board provided inadequate reasons or bases for denying an increased disability rating for a right knee disability by failing to explain why it relied upon inadequate VA examinations, failing to define subjective terms of degree, and failing to discuss favorable medical evidence in the record. Appellant's Br. at 11. As to his first contention, the appellant argues that all the medical examinations of record are inadequate because they all failed to include measurements of his "range of motion in active and passive, weight-bearing and non-weight-bearing modes." *Id.* at 12 (emphasis omitted). Next, the appellant argues that the Board denied entitlement to a disability rating of 60% for residuals of his knee replacement under 38 C.F.R. § 4.71a, DC 5055, but provided no definition or benchmark for "severe" painful motion or weakness, and thus failed to define "'subjective terms of degree.'" *Id.* (quoting *Johnson*

*v. Wilkie*, 30 Vet.App. 245, 254 (2018)). Lastly, the appellant asserts that the Board failed to discuss two relevant strands of medical evidence: (1) A March 2013 medical opinion that opined that his loss of motion postarthroplasty was "severe"; and (2) an August 2004 VA treatment note and a January 2006 Board hearing transcript that evidences the appellant's right knee instability was "so severe that he could only climb the stairs in his home on his hands and knees" (which the appellant contends evidences joint instability that would warrant a separate evaluation under DC 5257). *Id.* at 12-13.

Initially in his brief, the Secretary contended that the appellant's arguments are so broad and overreaching that they "fail to account for the various staged ratings he has been assigned during the course of the appeal." Secretary's Br. at 6. In particular, the Secretary noted that VA assigned the appellant a 30% disability rating from August 1, 1997, to September 30, 1997; from January 1, 1998, to July 16, 2008; and from September 1, 2009, onward. *Id.* The Secretary noted that, for all other periods on appeal, the appellant was granted a 100% disability rating for "convalescence purposes or following his total right knee replacement surgery." *Id.* For the first period (August 1, 1997, to September 30, 1997), the Secretary argued that the appellant fails to espouse any argument showing why he is entitled to a rating in excess of 30% for this period, and thus he has abandoned his arguments as to this point pursuant to *Pederson*, 27 Vet.App. 285. *Id.* at 7. For the second period (January 1, 1998, to July 16, 2008), the Secretary conceded that the 1998, 2000, and 2006 examinations the appellant contends are inadequate do not indicate whether range-of-motion testing was performed in accordance with § 4.59; however, the Secretary argued that this inadequacy cannot be corrected, as the appellant had a total knee replacement on July 7, 2008, and therefore it would be futile to conduct a new examination because that knee is "simply not the same knee [the] [a]ppellant had during this appeal period." *Id.* at 7-8 (citing R. at 3458-59, 4306-07, 4435-36). For the final and current period (September 1, 2009, onward), the Secretary conceded that a contemporaneous examination that complies with *Correia* is warranted because, although the 2010 and 2013 examinations considered the impact of weight-bearing on the appellant's right knee, the examinations did not comply with the final sentence of § 4.59. *Id.* at 11. Moreover, as noted above, the Court initially issued a single-judge memorandum decision remanding as to the entire period on appeal based on a finding that the examinations of record were inadequate, and the Secretary subsequently conceded at oral argument that he does not dispute that holding. OA at 30:30-30:52.

The Court finds that the Board clearly erred when it determined that the medical examinations of record were adequate. *See* 38 U.S.C. § 7261(a)(4); *D'Aries*, 22 Vet.App. at 103; *Gilbert*, 1 Vet.App. at 52. Upon review of the record, we agree with the Secretary's concession in his brief that neither the 2010 or 2013 examinations considered the impact of weight-bearing on the appellant's right knee, and thus do not comply with *Correia* or § 4.59. *See* Secretary's Br. at 12. Further, regarding the other periods in question, we will accept the Secretary's concession at oral argument that remand is necessary. Accordingly, the Court will remand the matter for a new medical examination. *Hicks v. Brown*, 8 Vet.App. 417, 421 (1995) (holding that the Board's reliance on an inadequate medical examination is cause for remand).

### D. Remand

On remand, the appellant is free to submit additional evidence and argument on the remanded matters, and the Board is required to consider any such relevant evidence and argument. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that on remand, the Board must consider additional evidence and argument in assessing entitlement to the benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). Because the appellant is free to submit additional evidence, and because new examinations may provide clarity as to all periods on appeal for his right knee, we will not address the parties' remaining assertions. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) (per curiam order) ("A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at the readjudication, and, of course, before this Court in an appeal, should the Board rule against him."). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for the decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and the Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112.

### III. CONCLUSION

After reviewing the parties' pleadings and record on appeal, the appeal of the Board's April 4, 2018, decision as to the right thigh hematoma claim is DISMISSED for lack of jurisdiction. As to the denial of a disability rating in excess of 30% for a right knee disability, and the denial of an earlier effective date and an initial disability rating in excess of 10% for radiation proctitis with fecal urgency, the decision on appeal is VACATED and the matters are REMANDED for readjudication.